

| | |
|---|---|
| **1320 19th Street, N.W., Suite 601**<br>**Washington, DC, 20036** | **2000 Duke Street, Suite 300**<br>**Alexandria, VA 22314** |

**Steven M. Oster**
Tel: 202.596.5291
Mobile: 703.577.8785
Fax: 703.747.5862
Email: soster@ostermcbride.com

**PRIVILEGED AND CONFIDENTIAL OFFER OF COMPROMISE**

**March 16, 2021**

Ms. Sonea Griffiths
151 park avenue
Mt. Vernon, NY 10550
914-255-8079
Soneasing@ymail.com

    **RE:** *Charon Coins LLC v. Sonea Griffiths*
       Case No. (TBD)

Dear Ms. Griffiths,

  This firm has been retained to represent Charon Coins LLC, a Colorado limited liability company (the "Company") and DJG Holdings LLC, a Wisconsin limited liability company (the "Affiliate") in all matters arising out of your purchase of 5.77483589 Bitcoin (the "BTC" or the "Goods") from the Company. Based upon our research, we are of the opinion that you have breached a contract with the Company by failing to pay $258,000.00 for the Goods you have received from the Company. We further conclude that separate from breaching a contractual obligation, you were unjustly enriched at the expense of the Company by retaining Goods currently valued at $324,141.54 ($56,130 per 1 Bitcoin) at the expense of the Company.

  The Company and the Affiliate have requested any questions, inquiries, or other communications about these matters be referred directly to our attention. We ask that you forward this letter and attachments to your attorney and have him or her respond directly to us. All further communications concerning this matter should be sent to my attention.

**Reply to D.C. Office**
**Admitted in D.C. Only**

This letter has been prepared and is being sent for the sole purpose of encouraging settlement discussions. Its contents, and any related communications, are privileged and confidential.

**This is a relatively straightforward matter. You purchased Goods from my client. At present, you possess both the Goods and the purchase price. Obviously, that is an unacceptable situation. Should you desire to rescind the transaction, you may return the BTC. Should you desire to complete the transaction, you may resend to the Company the purchase price. But you cannot keep both the BTC and the purchase price. If you attempt to do so, we will commence an action against you in Federal court.**

## Factual Background

The facts stated in this letter are intended to be exhaustive and we reserve the right to supplement and/or modify these factual statements for purposes of litigation as our investigation continues. That said, the basic facts are as follows:

1. On February 3, 2021 you purchased 1.6228053 BTC for $64,000 from the Company.

2. On February 8, 2021 you purchased 3.35685896 BTC for $154,000 from the Company.

3. On February 11, 2021 you purchased 0.79517163 BTC for $40,000 from the Company.

These transactions were negotiated over the phone and by email. In response to the Company's Know-Your-Customer and Anti-Money-Laundering due diligence questions, you provided copies of your drivers license and your social security number. Also, on January 5, 2021 you executed a statement under the penalty of perjury regarding the source of funds for the above-referenced transactions in cryptocurrency. In other words, our client undertook a good faith effort to confirm that your purchase of BTC was in compliance with applicable money-laundering and banking laws.

As payment for the BTC, you wired the total of $258,000.00 to the bank account of the Affiliate at BMO Harris, according to the Company's instructions. In a number of texts and recorded phone calls (recorded with your prior knowledge and permission) you confirmed that you received all the Goods and that you were happy with the Company's services.

On or about February 15, 2021, BMO Harris informed the Affiliate that it was freezing its account because allegations of fraud were made by an undisclosed party. BMO Harris did not provide any information beyond the statement that "we saw an affidavit asserting fraud related to the wires into your account." BMO Harris suggested the Affiliate reach out to the customers who wired funds into the account to obtain further information.

Acting on that suggestion, Mr. Devin Konopa, CEO of both the Company and the Affiliate, personally called you and three other customers who made purchases of Bitcoin from the Company and wired funds into the Affiliate's account. Every customer, including you, stated on recorded lines that they did not allege any fraud with respect to the transactions with the Company and that they received from the Company all of the BTC for which they bargained and paid. In other words, you admitted in a knowingly recorded conversation that the Company performed its end of the bargain.

Several days later, BMO Harris, through its legal department, informed the Affiliate's attorney it returned all the wired funds to their senders. Mr. Konopa made phone calls to you and three other customers to confirm receipt of funds. Every customer except you confirmed receipt. Every customer except you agreed to wire to the Company the funds that were returned from BMO Harris. Every customer except you acknowledged that it owed the Company payment for the BTC.

Mr. Konopa made a number of attempts to contact you; however you failed to answer or return his phone calls. As of the date of this letter you have **both** the BTC and the funds that rightly belong to the Company. Through discovery, we are likely to obtain the affidavit of fraud which BMO Harris mentioned. If you provided the affidavit, we will have no choice but to assume you perpetrated a fraud on the Company.

## The Company's Claims

As a result of the conduct described above, you have breached your contract with the Company, have unlawfully retained the Company's BTC, and otherwise acted in violation of state and federal law. If this matter proceeds to litigation, the Company will:

1. Obtain damages for breach of contract in the amount of $258,000.00 from you or an injunction ordering you to return the BTC to the Company.

2. In the alternative due to your unjust enrichment at the expense of the Company, obtain an injunction compelling you to return the BTC or its value

to the Company. As of 12:00 pm of March 15, 2021, the value of the BTC is $324,141.54 ($56,130 per 1 BTC)

3. Seek attorneys' fees and costs of collection as a result of your intentional misconduct.

### Conclusion and Offer of Compromise

We frequently find it is in the best interest of all parties to make a reasonable effort to explore an informal and confidential resolution of commercial disputes. It is our experience that a prompt and business-like negotiation outweighs the vagaries and expenses of litigation. **Surely you do not believe you are entitled to keep the BTC without making payment to the Company.** If you have any concern as to the provenance of the BTC, the Company is willing to rescind the transaction and take back the BTC. **Or, the Company is willing to accept full payment of the original purchase price provided payment is made promptly.**

It would be an error to infer from this offer any lack of confidence on our part in the merits of the Company's claims or an unwillingness on its part to litigate. If you are interested in exploring a settlement, please contact me (or, if you are represented by counsel, have him or her contact me) no later than March 19, 2021. If we do not hear from you by then, we will initiate litigation.

I look forward to discussing this matter with you or your attorney as soon as possible.

Cordially yours,
**Oster McBride PLLC**

Steven M. Oster
Evgenia Sorokina (Member NY Bar)