## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| **CHARON COINS, LLC,**<br><br>　　　　　**Plaintiff,**<br>　v.<br><br>**SONEA GRIFFITHS,**<br><br>　　　　　**Defendant.** | Civil Action No. 7:21-cv-2777 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO ATTACH DEFENDANT'S
## BANK ACCOUNTS OR FOR A PRELIMINARY INJUNCTION

Plaintiff Charon Coins, LLC ("Charon"), by and through undersigned counsel, respectfully moves the Court for an order of attachment preventing Defendant Sonea Griffiths from removing assets, including cash and Bitcoin ("BTC") cryptocurrency, out of the Court's jurisdiction. Charon makes this motion because Griffiths purchased BTC from Charon, is in possession of both the purchase price and the BTC, and has refused to rescind the transaction by returning the BTC or performing the transaction by paying the purchase price. She attempted to evade service and, when asked to agree not to secrete funds from the Court in return for an extension of time to answer the Complaint, instead filed a misleading Motion asking for time to retain counsel even though she had already engaged counsel to communicate with Charon on her behalf.

**FACTUAL BACKGROUND**

For purposes of this Motion, all the Court needs to know is that Griffiths is a buyer in possession of goods and the purchase price, and refuses to rescind (return the goods) or perform (tender the purchase price). (Konopa Decl. ¶ 15). She entered into three agreements with Charon, a company in the business of buying and selling BTC for its own account, to purchase $258,000 worth of BTC at its then-current price. (*Id.* ¶¶ 4-8). Charon delivered the BTC to Griffiths. (*Id.* ¶ 8). Although Griffiths initially paid the funds to Charon's collection agent, the agent's bank froze the funds based on a customer complaint (we believe Griffiths was the source of the false complaint). (*Id.* 9-11).

The agent's bank returned the funds to Ms. Griffiths and three other purchasers. All of the other purchasers have since repaid Charon. Only Ms. Griffiths refuses to return the BTC or repay the purchase price. (*Id.* ¶¶ 13-15). **Surely Griffiths cannot contend she is entitled to keep *both* the BTC and the purchase price. Yet that is exactly what her conduct, up to and including her conduct before this Honorable Court, implies**.

As a threshold matter, that Charon sold Griffiths a form of cryptocurrency is irrelevant to her **liability.** A buyer of goods must pay for or return the goods, whether they be cryptocurrency or widgets. On the other hand, that Charon sold Griffiths BTC is very relevant to this **motion.** The ease with which BTC may be transferred out of the Court's jurisdiction without a ready means to determine its destination(s) underscores the necessity of pendent relief. This case is no different than one in which an individual drove a new car off of the lot, left a check with the dealership that was not honored, and refuses to return the car or repay

the money. Except cryptocurrency, existing only in the virtual world, is a lot easier to "disappear" than a car. Once transferred to another virtual wallet, or wallets, the trail goes cold and it is impossible, without cooperation from the transferee(s), to identify the BTC Charon sold to Griffiths. (Konopa Decl. ¶¶ 17-18).

### Plaintiff's Transactions with Griffiths

Plaintiff is in the business of buying and selling Bitcoin. (*Id.* ¶ 2). It brings this action because in February, 2021 Charon in three separate agreements sold a total of 5.77483589 Bitcoin to Griffiths in return for payments totaling $258,000.00. (*Id.* ¶¶ 4-8). Griffiths received and accepted Bitcoin and initially paid the purchase price to DJG Holdings, LLC ("DJG"), Charon's agent for collection. At the same time, three other purchasers wired funds as consideration for purchasing BTC from Charon.[1]

Shortly thereafter DJG's bank, BMO Harris, claimed an undisclosed affiant alleged the wires to DJG were "fraudulent." As a result, BMO Harris froze DJG's account and then reversed the wires, sending the purchase price back to Griffiths, who had already taken possession of the Bitcoin delivered by Charon. (*Id.* ¶¶ 11-13).

In March 2021 Charon contacted Griffiths by email and by phone. In a taped conversation with Griffiths' express consent, Griffiths admitted receiving the Bitcoin and denied any fraudulent act or omission on the part of the Charon or DJG. (Ex. A). In a subsequent con-

---

[1] Prior to the transactions Charon conducted a due diligence review of Griffiths and the other purchasers in order to comply with anti-money laundering rules, and made the appropriate filings with the Department of Treasure Financial Crimes Enforcement Network ("FinCEN"). (Konopa Decl. ¶ 3).

versation, however, after the funds were returned to her account, Griffiths claimed the transaction was "illegal" but refused to explain the basis for her allegation and refused to rescind the transaction. (Ex. B). Charon thus was forced to commence the within action to recover the purchase price or the BTC from Griffiths.

### Further Indications of Griffiths' Bad Faith

Griffith's bad faith has continued. **First**, she ignored a good faith offer to rescind or perform the agreement. **Second**, she attempted to evade service. Despite six attempts at service, Charon's process server was forced to post the summons a complaint after, *inter alia*, noting the presence of Griffith's car at her residence and, after identifying himself and stating he had important legal papers to serve, hearing a female voice state "I'll tell him you're not here." (Ex. C). Griffiths apparently lied, or had someone else lie, to the process server on more than one occasion. (*Id.*).

**Third,** Griffiths has not been candid with the Court. On May 11, 2021, Jackson Kerr of Tesser Ryan & Rockman LLP represented to undersigned counsel that his firm had been "been retained by Ms. Griffith to review the complaint filed by Charon Coins, LLC and provide an analysis of her options moving forward" but had not been retained to "appear" in the case." (Ex. D). Tesser Ryan asked for a thirty day extension to familiarize itself with the facts, and forwarded to undersigned counsel a stipulation to that effect for filing in this case. Charon was willing to agree, provided Griffiths represented she would not challenge service or take any action to remove the funds or the BTC from the Court's jurisdiction. (Ex. E). Instead, the following day Griffiths filed a *pro se* motion asking for "30 days to obtain a lawyer that can

properly represent me." Griffiths did not serve Charon with her extension request. The Court granted Griffiths an extension through June 14, 2021.[2]

**The conclusion is inescapable: Griffiths saw an opportunity to enrich herself with a windfall at Charon's expense and took that opportunity. Without the Court's intervention, there can be no assurance that the funds or BTC will be available to satisfy an inevitable judgment against Griffiths.**

## ARGUMENT

Pursuant to Fed. R. Civ. P ("Rule") 64, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). New York law provides for the issuance of an order of attachment under specified circumstances. *See* CPLR § 6201 (providing for pre-judgment attachment where, *inter alia*, inability to obtain personal service despite diligent efforts or intent to frustrate enforcement of a judgment that might be rendered is shown). In the alternative, pursuant to Rule 65, Charon seeks a preliminary injunction restraining Griffiths from encumbering or conveying the BTC Charon sold her.

### I. CHARON IS ENTITLED TO AN ORDER OF ATTACHMENT.

Pre-judgment attachments are available under New York law "to obtain quasi-in-rem jurisdiction over a foreign defendant or to establish security for satisfaction of a potential judgment, or both." *Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F. Supp. 724, 726 (S.D.N.Y. 1979); see also *Rothberg v. Chloe Foods Corp.*, 2008 LEXIS 6523, at *20 (E.D.N.Y. Jan. 29, 2008) ("Prejudgment attachment is a provisional remedy to secure a debt by preliminary

---

[2] Charon does not suggest, or have reason to believe, Tesser Ryan or any of its attorneys acted improperly.

levy upon the property of the debtor in order to conserve that property for eventual execution."). Since Griffiths is a New York resident "attachment should issue only upon a showing that drastic action is required for security purposes." *Buy This Inc. v. MCI Worldcom Communs., Inc.*, 178 F. Supp. 2d 380, at 383 (S.D.N.Y. 2001) (*emphasis in original*) (*quoting Reading & Bates*, 478 F. Supp. at 726-27 (*citations omitted*)).

New York law requires Charon demonstrate four conditions to obtain a prejudgment attachment: **First**, "there is a cause of action;" **second**, "it is probable that the plaintiff will succeed on the merits;" **third**, "one or more grounds for attachment provided in section 6201 exist;" and **fourth**, "the amount demanded from the defendant exceeds all counterclaims known to plaintiff." CPLR §6212(a). Each of these prerequisites is met in this case.

There can by no serious question that the first two tests are met: Charon has stated claims against Griffiths for breach of contract and unjust enrichment. Charon seeks, *inter alia*, money damages. "The standard for determining whether a cause of action exists for purposes of attachment under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated, a cause of action exists." *Algonquin Power Corp. v. Trafalgar Power*, 2000 LEXIS, at *21 (N.D.N.Y. Nov. 8, 2000). Furthermore, because Griffiths has kept both the purchase price and the BTC, that Charon will prevail on the merits is self-evident, whether Charon elects to pursue rescission or performance.

Two sections of CPLR § 6201 are met here. First, despite ample diligence, including six separate attempts to serve her, Charon was unable to effect personal service on Griffiths (instead, in accordance with New York law, the process server posted service on Griffith's front door). CPLR § 6201(2). According to the process server's affidavit, (Ex. C), it is reasonable to infer on at least two occasions Griffiths was present but lied, or had someone else lie

on her behalf, in order to evade service. (*Id.*). Second, CPLR § 6201(3) provides that an order of attachment may be granted when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state *or is about to do any of these acts.*" CPLR § 6201(3) (emphasis added). It is reasonable to infer from Griffiths' evasion of service and refusal to maintain the *status quo* in return for a thirty day extension that she intends to defraud Charon and/or move her funds and the BTC out of the jurisdiction.

Griffiths is the only purchaser who thus far has refused to repay Charon for the BTC, even though she has freely admitted receiving the Bitcoin to her satisfaction. Concurrently with this Motion, Plaintiff is seeking Leave to Serve a Subpoena for BMO Harris's bank records, to determine who falsely claimed Charon obtained the funds by fraud. Based on Griffiths' conduct thus far, Charon strongly suspects it was Griffiths who caused BMO Harris to return the purchase money.

Upon Plaintiff's best information and belief based on a preliminary investigation, Griffiths does not own any property other than the Bitcoin purchase funds on her bank account which were returned to her, 5.77483589 Bitcoin which she bought from Charon, and a vehicle. She does not own her residence.

Finally, there is no basis for Griffiths to bring a counterclaim against Charon, let alone a claim in an amount that exceeds Charon's claim against Griffiths. Accordingly, Plaintiff is entitled to an order of attachment of Griffiths' bank accounts to satisfy a judgment against her and in favor of Charon.

## II. ALTERNATIVELY, GRIFFITH SHOULD BE ENJOINED FROM TRANSFERRING THE BTC OR HER ASSETS PENDING RESOLUTION OF CHARON'S CLAIMS.

Plaintiff seeks a preliminary injunction restraining Defendant from transferring, dissipating, assigning, conveying or selling 5.77483589 Bitcoin she obtained from Charon. To obtain a preliminary injunction, Plaintiff must establish "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and (3) a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

### A. Irreparable Harm

A party may establish irreparable harm by demonstrating that the defendant has acted "to frustrate a judgment." *Bank of China v. NBM LLC*, 192 F. Supp. 2d 183, 191-92 (S.D.N.Y. 2002).*Encore Credit Corp. v LaMattina*, 2006 LEXIS 2935, at *14 (E.D.N.Y. Jan. 18, 2006); *Trafalgar*, 131 F. Supp. 2d at 350 (*citing Pashaian v. Eccelston Prop., Ltd*, 88 F.3d 77, 85 (2d Cir.1996)). Griffiths' actions, including first admitting and then denying receipt of her bargained-for consideration, refusing to rescind or perform her agreements, evading service, and refusing to maintain the status quo in return for an extension of time to answer the complaint, individually and in the aggregate imply an intention to frustrate a judgment for Charon.

Furthermore, the volatility of BTC renders a money judgment speculative. By way of example, the BTC for which Griffiths was supposed to pay Charon $258,000 has ranged in value from $334,121.61 to $214,353.82 over the past five weeks. Money damages are inherently uncertain.

B. **Likelihood of Success**

For the reasons already described in great detail, Charon has demonstrated a likelihood of success on the merits. Permitting Griffiths to retain the BTC without payment is an affront equity and good conscience. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). If Griffiths truly believed the transaction was "illegal," she would not have rejected Plaintiff's offer to rescind the transaction, *i.e.*, 5.77483589 Bitcoin. As noted at the outset of this memorandum, Griffiths is a buyer of goods in possession of both the goods and the purchase price. Given this undisputed evidence, Plaintiff is likely to succeed on the merits.

C. **Balance of Hardship**

Charon must also demonstrate the balance of hardships is in its favor. This is a relatively simple exercise. Cryptocurrencies can be transferred to different virtual wallets instantly. (Konopa Decl. ¶¶ 17-18). Even a costly, time-consuming investigation is not certain to trace the destination of Charon's BTC. On the other hand, maintaining the *status quo* during the pendency of this litigation will work no hardship on Griffiths.

## CONCLUSION

For all of the foregoing reasons, Charon's motion should be granted, and this Honorable Court should:

A. Enter an order attaching Griffiths' bank accounts in the amount of $258,000.00 pending a determination of this action;

B. Issue a preliminary injunction enjoining Griffiths from transferring all or part of the BTC she received from Charon pending a determination of this action;

C. Award Charon its attorneys' fees and litigation expenses incurred in preparing and arguing this Motion; and

D. Such other relief as this Honorable Court deems just and appropriate.

June 11, 2021                                    Respectfully submitted,

**OSTER MCBRIDE, PLLC**

**/s/ Evgenia V. Sorokina**
Evgenia Sorokina (N.Y. Bar No. 4607479)
1320 19th Street, N.W., Suite 601
Washington, DC, 20036
esorokina@ostermcbride.com

*Attorneys for Charon Coins, LLC*