IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| CHARON COINS, LLC,<br><br>        Plaintiff,<br>v.<br><br>SONEA GRIFFITHS,<br><br>        Defendant. | Civil Action No. 7:21-cv-2777 |

**DECLARATION OF DEVIN KONOPA IN SUPPORT
OF EMERGENCY MOTION TO ATTACH DEFENDANT'S
<u>BANK ACCOUNTS OR FOR A PRELIMINARY INJUNCTION</u>**

1. I, Devin Konopa, over 18 years of age, solemnly swear under the penalty of perjury that all the following are true and correct under my best knowledge and understanding. I am the Chief Executive Officer of Plaintiff Charon Coins, LLC ("Charon") and have personal knowledge of the facts stated herein.

2. Charon operates a proprietary business trading in crypto currencies. It purchases cryptocurrencies with its own funds and sells them for its own account. Transactions with customers are negotiated and entered into by email, text message, and over the phone.

3. Charon collected certain personal information from its customers to comply with Anti-Money-Laundering and Know-Your-Customer ("AML/KYC") rules and regulations.

4. On February 3, 2021 Sonea Griffiths ("Griffiths") agreed to and did purchase 1.6228053 BTC from Charon for $64,000.

5. On February 8, 2021 Griffiths agreed to and did purchase 3.35685896 BTC from Charon for $154,000.

6. On February 11, 2021 Griffiths agreed to and did purchase 0.79517163 BTC from Charon for $40,000.

7. The subject transactions were negotiated over the phone and by email. In response to the Charon's KYC/AML due diligence questions, Griffiths provided copies of her driver's license and social security number. Also, on January 5, 2021, she executed a statement under the penalty of perjury attesting to the source of funds for the subject transactions.

8. Charon fully performed its duties under the aforementioned agreements and conveyed to Griffiths 5.77483589 Bitcoin.

9. Griffiths initially wired the $258,000 purchase price for the Bitcoin into the bank account of DJG Holdings LLC, a collection agent for Charon ("DJG") at BMO Harris bank ("BMO Harris"), in accordance with Charon's instructions.

10. In a number of texts and recorded phone calls Griffiths confirmed she received the Bitcoin and was satisfied with Charon's performance. Each phone call was recorded with Griffiths' express consent.

11. On or about February 15, 2021, BMO Harris informed DJG that it was freezing DJG's account at the BMO Harris because allegations of fraud were made by an undisclosed party. BMO Harris did not provide any specifics of these allegations other than a statement that "we saw an affidavit asserting fraud related to the wires into your account," including

Griffiths' wires. BMO Harris also suggested that Charon should contact customers who wired funds into the account to obtain further information.

12. Acting on the BMO Harris's suggestion, Charon called Griffiths and three other customers who purchased Bitcoin from Charon and wired the now-frozen funds into DJG's account. Every customer, including Griffiths, confirmed on fully disclosed, consented to, and recorded lines they received the Bitcoins they had bargained and paid for from Charon and denied that Charon or DJG had engaged in any fraudulent act or omission. In a phone call on February 25, 2021, Griffiths agreed to participate in a 3-way phone call with the bank to confirm that she did not know of any fraud involved in receiving and paying for BTC.

13. Thereafter, BMO Harris informed Charon it returned all of the wired funds to the respective senders, including Griffiths.

14. Plaintiffs made phone calls to Griffiths and the three similarly situated customers to confirm their receipt of the reversed wires. Every customer except Griffiths confirmed receipt. Every customer except Griffiths agreed to resend and has resent the purchase price for their Bitcoin to Charon. Thus, in a phone call on March 8, 2021, Griffith refused to pay for the Bitcoin which she successfully received because "the money was illegal, and everything was illegally done." These statements are unsupported by any evidence and are false.

15. Nevertheless, Charon offered to rescind the transaction if Griffiths truly believed there had been some undisclosed illegality. She has refused to rescind the transaction. Yet she also refused to return the purchase money.

16. Charon made repeated attempts to contact Griffiths after March 8, 2021; however Griffiths refused to answer or return Charon's phone calls. The last time Charon attempted to contact Griffiths was on March 24, 2021 again by phone and text. Again she refused to respond.

17. Charon conducted a partial analysis of one of Griffiths' electronic wallets, which is an account on an mobile application such as Edge or Coinbase holding cryptocurrency. All the transfers of bitcoin from one wallet to another are registered on blockchain and are not erasable. The wallet/account owner does not need an intermediary, such as a bank, to transfer the cryptocurrency to another wallet/account which may be held on the same or different application. The transfers take place instantaneously once the wallet/account address is inserted in the application and the button "send" is selected. The only information needed for a transfer is the wallet/account address of the recipient. For instance, one of three Griffiths' wallets/accounts which she used to receive BTC from Charon had the address of REDACTED. On February 11, 2021 at 4:32 pm we transferred to Griffiths and she received 0.79517163 BTC onto that wallet. Several hours later, at 4:59 am on February 12, 2021, Griffiths transferred all BTC held in that wallet as follows: 0.77179687 BTC to wallet/account REDACTED and 0.02323464 BTC to wallet/account REDACTED. Thus Griffiths almost immediately transferred all BTC she bought from Charon on February 11, 2021 to two other wallets/accounts. We do not know who controls those wallets/accounts and whether the BTC was transferred further. Ordering a tracing blockchain analysis of the destination of BTC we sent to all three

4

Griffiths' wallets would cost Charon tens of thousands of dollars, especially if she undertook "mixing." "Mixing" is a technique which is used to make the transfers of bitcoin untraceable. The mixer alone or with a team will set up hundreds of wallets/accounts on different applications and will transfer out of the original wallet fragmented amounts of bitcoin. There might be already an amount of bitcoin at the second-level wallets/accounts to which the new transfer would add more bitcoin. Then, from the second-level wallets/accounts the mixer will transfer bitcoin to a greater number of third-level wallets/accounts, some of which would already have an amount of bitcoin, and so forth. Based on how quickly Griffiths transferred out all the BTC she bought from us on February 11, 2021, that she emptied entirely her original wallet, that she made two transfers at the same time of 4:59 am, she is likely to be involved in "mixing".

18. Given Griffiths' misconduct, we suspect she already mixed the BTC to the extent it will be virtually impossible to trace her transfers, that she has or will transfer all her funds at her bank accounts, and secrete her valuable property in order to avoid paying for the BTC she purchased. She has breached her agreements with us and is in possession of both the BTC and the purchase price.

**I declare under penalty of perjury according to the laws of the United States of America that the foregoing facts are true and correct to the best of my knowledge, information, and belief.**

June 5, 2021

*Devin Konopa*
Devin Konopa

5