## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT NEW YORK

CHARON COINS, LLC

       Plaintiff,

  v.                             **Civil Action No. 7:21-cv-02777-VB**

SONEA GRIFFITHS,


       Defendant.

_____/

### SECOND AMENDED COMPLAINT

Plaintiff CHAROIN COINS, LLC ("Charon"), by and through undersigned counsel, states the following as its First Amended Complaint against Defendant Sonea Griffiths:

### INTRODUCTION

1.    This is a case in which the buyer of goods is in possession of the goods and the purchase price, and refuses to rescind or perform the agreement between the parties. Plaintiff is in the business of buying and selling Bitcoin. It brings this action because in February, 2021 Charon in three separate transactions sold a total of 5.77483589 Bitcoin to Griffiths in return for promised payments totaling $258,000.00. Griffiths received and accepted Bitcoin and initially paid the purchase price to DJG Holdings, LLC ("DJG"), acting as Charon's agent for collection.

2.    Shortly thereafter DJG's bank, BMO Harris, N.A, claimed an undisclosed affiant alleged wires to DJG were "fraudulent." As a result, BMO Harris froze DJG's account and then reversed the wires, sending the purchase price back to Griffiths, who had already taken possession of the Bitcoin delivered by Charon.

3.      In March 2021 Charon contacted Griffiths by email and by phone. Griffiths admitted receiving the Bitcoin and denied any fraudulent act or omission on the part of the Charon or DJG. In turn, Charon Coins offered to rescind or complete the transaction. Griffiths, without any legitimate basis, refused to pay for or return the Bitcoin and stopped responding to Charon's and its counsel's communications.

4.      Later, in her Answer to the Complaint, Griffiths admitted she had misrepresented that she was the real purchaser of the Bitcoin, that she was paying for the Bitcoin with money from her savings or earnings, and that she controlled the wallet(s) into which she directed Charon to transfer the Bitcoin.

5.      **At present, Griffiths and/or the entity she surreptitiously acted on behalf has possession of both the Bitcoin and the purchase price, a situation that is patently unlawful and inequitable. Accordingly, Charon brings this action to recover the purchase price or the Bitcoin for which Charon has not paid.**

## NATURE OF ACTION

6.      Charon seeks $258,000.00 in actual damages and an amount to be determined in punitive damages sustained as a result of Griffith's fraud.

7.      Caron seeks $258,000 in actual damages and an amount to be determined in punitive damages sustained as a result of Griffith's fraud,

8.      Alternatively, Charon seeks return of 5.77483589 Bitcoin on grounds of unjust enrichment and an amount to be determined in punitive damages as a result of Griffith's fraud..

**PARTIES**

9.      Charon is a limited liability company organized under the laws of Colorado and maintaining its principal place of business at 250 E Wisconsin Avenue, Suite 1800, Milwaukee, WI 53202. DJG is a limited liability company, organized under the laws of Wisconsin and maintaining its principal place of business at 2415 N. Frederick Avenue, Milwaukee, WI 53211. DJG acts as Charon's agent for purposes of collecting payment for Bitcoin sold by Charon

10.      Defendant is an individual residing at 151 Park Avenue, Mt. Vernon, NY 10550.

**JURISDICTION AND VENUE**

11.       This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Charon and the Griffiths and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.      This Honorable Court has personal jurisdiction over Griffiths because she resides in the State of New York.

13.      Venue is proper in the South District of NY because Griffiths resides in this district, committed the unlawful acts giving rise to this case in this District, and, upon information and belief, the property at issue is located in this District.

**FACTUAL ALLEGATIONS**

14.      Charon operates a proprietary trading in crypto currencies business buying cryptocurrencies with its own funds and reselling cryptocurrencies to customers at their requests for a mutually agreed-upon price. Transactions with customers are negotiated and entered into by email, text message, and over the phone.

15.     Charon collects certain personal information from its customers to comply with Anti-Money-Laundering and Know-Your-Customer ("AML/KYC") rules and regulations.

16.     On February 3, 2021 Griffiths agreed to and did purchase 1.6228053 BTC from Charon for $64,000. *See* Ex. A.

17.     On February 8, 2021 Griffiths agreed to and did purchase 3.35685896 BTC from Charon for $154,000. *See* Ex. B.

18.     On February 11, 2021 Griffiths agreed to and did purchase 0.79517163 BTC from Charon for $40,000. *See* Ex. C.

19.     The subject transactions were negotiated over the phone and by email. In response to the Charon's KYC/AML due diligence questions, Griffiths provided copies of her driver's license and social security number. Also, on January 5, 2021, she executed a statement under the penalty of perjury attesting to the source of funds for the subject transactions. *See* Ex. D.

20.     Charon fully performed its duties under the aforementioned agreements and conveyed to Griffiths 5.77483589 Bitcoin.

21.     Griffiths initially wired the $258,000 purchase price for the Bitcoin into the bank account of DJG at BMO Harris, in accordance with Charon's instructions.

22.     In a number of texts and recorded phone calls Griffiths confirmed she received the Bitcoin and was satisfied with Charon's performance. *See* Ex. E.

23.     On or about February 15, 2021, BMO Harris informed DJG that it was freezing DJG's account because allegations of fraud were made by an undisclosed party. BMO Harris did not provide any specifics of these allegations other than a statement that "we saw an affidavit asserting fraud related to the wires into your account," including Griffith's wires. BMO

Harris also suggested that Charon should contact customers who wired funds into the account to obtain further information.

24.     Acting on the BMO Harris's suggestion, Charon called Defendant and three other customers who purchased Bitcoin from Charon and wired funds into DJG's account in the same time frame. Every customer, including Griffiths, confirmed on disclosed, recorded lines they received the Bitcoins they had bargained and paid for from Charon and denied that Charon or DJG had engaged in any fraudulent act or omission.

25.     Thereafter, BMO Harris informed Charon it returned all of the wired funds to the respective senders, including Griffiths. *See* Ex. F.

26.     Plaintiffs made phone calls to Griffiths and the three similarly situated customers to confirm their receipt of the reversed wires. Every customer except Griffiths confirmed receipt. Every customer except Griffiths agreed to resend the purchase price for their Bitcoin to Charon.

27.     Charon made repeated attempts to contact Griffiths; however Griffiths refused to answer or return Charon's phone calls.

28.     On March 16 Charon's attorneys sent a demand letter to Griffiths requesting she either (a) perform her agreements by repaying $258,000 to Charon or (b) rescind her agreement by returning the Bitcoin to Charon.

29.     Griffiths did not respond to counsel's letter, did not repay the $258,000 and retained possession of the Bitcoin.

30.     On March 24, 2021 Charon contacted Griffiths again by phone and text. Again she refused to respond.

## COUNT ONE
## BREACH OF CONTRACT

31.     Charon incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

32.     A series of three contracts between Charon and Griffiths for the purchase and sale of Bitcoin are evidenced by an exchange of texts and/or emails and the parties' performance. *See* Ex. A, B, and C.

33.     Charon performed its obligations under the contracts with Griffiths by delivering the agreed upon amount of Bitcoin to Griffiths. *See* Ex. E.

34.     Because a third party (BMO Harris Bank) returned Griffith's payment to her, Griffiths still owes Charon Coins $258,000 under three contracts for purchase of Bitcoin.

35.      Griffiths' breaches of the three sales contracts are material, unexcused, and in bad faith.

36.     As a direct, proximate, and foreseeable result of Griffith's breaches of the contracts, Charon have suffered and will continue to suffer damages in excess of $75,000, exclusive of interest and costs.

## COUNT TWO
## UNJUST ENRICHMENT

37.     Charon incorporate the preceding paragraphs of this Complaint as if fully set forth herein, except for those alleging a contract between them and Griffiths.

38.     Griffiths knew at all relevant times the terms of each of her respective agreements with Charon; that is, transfer of the Bitcoin by Charon to her and her payment of $258,000 to DJG.

39.     After BMO Harris returned the purchase price back to Griffiths, she knew it would be unjust and unlawful to retain both the Bitcoin and the funds. Yet that is exactly what she has done.

40.     Griffiths has been enriched at Plaintiffs' expense.

41.     Allowing Griffiths to retain the Bitcoin she received from Charon without payment is an affront equity and good conscience.

42.     Charon comes to this Honorable Court with clean hands.

43.     Accordingly, Griffiths must return the Bitcoin to Charon.

**COUNT THREE**
**FRAUD/NEGLIGENT MISREPRESENTATION**

44.     Charon incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

45.     Charon undertakes due diligence on all purchasers to, *inter alia*, protect itself from fraudulent or criminal transactions.

46.     Charon requires purchasers of Bitcoin to confirm their identity, confirm that they are purchasing Bitcoin for themselves, confirm that they are purchasing the Bitcoin using money they have earned or are otherwise in possession of through legal personal savings, and confirm that the virtual wallet into which the purchaser asks Charon to deposit the Bitcoin is controlled by the purchaser.

47.     Each such representation is a material inducement to Charon entering into an agreement to sell Bitcoin to a prospective purchaser.

48.     First, on January 5, 2021, she stated "Stanley Black & Decker…" provided the funds for which she made the first purchase of Bitcoin. *See* Ex. D.

49.    Griffiths had no legitimate basis to know whether or not this statement was true.

50.    Charon relied on this representation.

51.    Thereafter, Griffiths represented to Charon on Charon's due diligence form that she purchasing the BTC as a "personal investment." *See* Ex. G.

52.    Griffiths made this representation knowing it to be false.

53.    Griffiths represented to Charon on Charon's due diligence form that she was purchasing the Bitcoin with her own funds, comprised of her personal "salary and income from job and personal savings." *See* Ex. G.

54.    Griffiths made the representation knowing it to be false.

55.    By email dated February 3, 2021, Griffiths represented to Charon that the wallet into which she asked Charon to deposit the funds was hers and under her control.

56.    Griffiths made this representation knowing it to be false.

57.    Griffiths has admitted that the acted as a "cutout," purchasing Bitcoin for an undisclosed third party.

58.    Griffiths stated Black & Decker denied it or its former affiliate, CDIY, provided any funds for the purchase of the Bitcoin.

59.    Griffin admitted she did not use her own money to purchase the Bitcoin.

60.    Griffin admitted she did not own or control the wallet into which she directed Charon to deposit the Bitcoin.

61.    Griffiths made these misrepresentations for the purpose of inducing Charon to sell her the BTC.

62.     Griffiths made these representations in return for a promised "fee" from the person or persons for whom she purchased the Bitcoin from Charon.

63.     Griffiths knew that Charon would rely on her misrepresentations.

64.     Charon reasonably relied on Griffith's misrepresentations to its detriment.

65.     Because Griffiths purchased the Bitcoin using another entity's purchase funds, directed them into a wallet over which she had no control, and did not purchase them for her own account, the transaction was flagged by Griffiths' bank and Charon's agent's bank.

66.     As noted above, BMO Harris Bank first froze Charon's agent's account and then returned the purchase money to Griffith's account at TD Bank, N.A. According to Griffiths, the purchase money is no longer in her account, except for $6,000-8,000.

67.     Had Griffiths truthfully responded to Charon's due diligence questions, Charon would not have proceeded with the transaction, would not have transferred the Bitcoin into the wallets as directed by Griffiths, and would not have suffered the damages described herein.

68.     Griffiths misrepresentations proximately caused Charon damages in excess of $258,000.

**WHEREFORE**, Charon respectfully requests this Honorable Court enter judgment in its favor and against Griffiths as follows:

A.      Award Charon damages of $258,000.00 for breach of contract;

B.      Alternatively, enjoin Griffiths to return 5.77483589 Bitcoin to Charon (or award damages in an amount equal to the highest value of such Bitcoin while wrongfully retained by Griffiths);

C.      Alternatively, award Charon damages of $258,000.00 for fraud;

D.      Award Charon punitive damages for Griffiths' fraud;

E.    Award Charon its attorneys' fees and litigation expenses incurred in this action;

F.    Award Charon its costs; and

G.    Such other relief as this Honorable Court deems just and appropriate.


July 6, 2021                                          Respectfully submitted,


                                                     **/s/ Steven M. Oster**
                                                     Evgenia Sorokina (N.Y. Bar No. 4607479 )
                                                     Steven M. Oster (*Pro Hac Vice* Admission)
                                                     **OSTER MCBRIDE, PLLC**
                                                     1320 19th Street, N.W., Suite 601
                                                     Washington, DC, 20036
                                                     Tel:    202.596.5291
                                                     Fax:    202.747.5862
                                                     esorokina@ostermcbride.com
                                                     soster@ostermcbride.com

                                                     *Attorneys for Charon Coins, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This will certify the attached Second Amended Complaint was served by electronic

mail on the defendant, Sonea Griffiths::

      Sonea Griffiths
      151 Park Avenue
      Mt. Vernon, NY 10550
      Soneasing@ymail.com

July 6, 2021                            */s/ Steven M. Oster*
                                      Steven M. Oster